# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

**COLLETTE MASON,**

    *Plaintiff,*                             **Case No.: 2:26-cv-2094**

    *v.*

                                       **JURY TRIAL DEMANDED**

**CLARITY SERVICES, INC.,**

    *Defendant.*

_____/

## COMPLAINT AND JURY TRIAL DEMAND

COMES NOW the Plaintiff, Collette Mason ("Ms. Mason"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendant, Clarity Services, Inc. ("Clarity" or "Defendant"), stating as follows:

## PRELIMINARY STATEMENT

1. This is an action for damages brought by Ms. Mason against the Defendant for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA").

## JURISDICTION AND VENUE

2. Subject matter jurisdiction arises under the FCRA, 15 U.S.C. § 1681p and 28 U.S.C. § 1331, as the FCRA is a federal statute.

3. The Defendant is subject to the jurisdiction of this Court pursuant to § 48.193, Fla. Stat. and Fed. R. Civ. P. 4(k).

4. Venue is proper in The Middle District of Florida, Fort Myers Division,

because the acts complained of were committed and/or caused by the Defendant within Lee County, Florida.

## PARTIES

### Ms. Mason

5.     Ms. Mason is a natural person residing in Fort Myers, Lee County, Florida.

6.     Ms. Mason is a Consumer as defined by the FCRA, 15 U.S.C. § 1681a(c).

### Clarity

7.     Clarity is a Delaware corporation, with a principal business address at 475 Anton Boulevard, Costa Mesa, CA 92626.

8.     Clarity is registered to conduct business in the State of Florida, where its Registered Agent is CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324.

9.     Clarity is a Consumer Reporting Agency ("CRA") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that it, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and uses various means of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail and telephone communications.

## FACTUAL ALLEGATIONS

### Clarity's Inaccurate Consumer Reports Regarding Ms. Mason

10. Around July 12, 2021, Clarity began maintaining a credit file on Ms. Mason.

11. Clarity, a CRA that predominantly serves the needs of online lenders making short-term loans, programs its systems to acquire and report as much information as possible, with little regard to the quality or accuracy of the data.

### Driver's License Numbers

12. Clarity's credit file on Ms. Mason contains nine separate driver's license entries – which is itself impossible, as Florida law permits a person to hold only one driver's license at a time.

13. Several additional driver's license entries are the wrong length: "XXXXXXXXXXX4000" (15 characters), "XXXXXX8254" (10 characters), and "XXXXXXXX6820" (12 characters). A valid Florida driver's license number is exactly 13 alphanumeric characters.

14. These facially impossible license entries had zero chance of being accurate – on their face, the data is virtually assured to be false.

15. Reasonable procedures designed to assure maximum possible accuracy of consumer reports would have flagged and rejected these entries rather than incorporating and selling them.

16. Lenders rely on driver's license data to confirm a consumer's identity. The presence of impossible license data in Ms. Mason's file creates the false impression that her identity cannot be confirmed, directly damaging her creditworthiness.

### Incorrect Residential History and Addresses

17. Ms. Mason's Clarity credit file contains an entry where Ms. Mason's home address is reported as "CENTRAL AVE FORT MYERS FL 33901" – a record that contains a street name, city, state and ZIP code but is missing both the street number and the street type entirely.

18. No mail carrier could deliver to such an address, no postal database would validate it, and no consumer in fact resides there.

19. This address is facially impossible and would have been rejected by any reasonable procedure designed to assure maximum possible accuracy.

20. Clarity's credit scoring system specifically looks at the number of changes to a consumer's residential history; the more frequently a consumer has new address information reported – even if the address is the same but with a small variation – the worse a consumer will score.

21. By reporting the same address in multiple malformed formats, Clarity artificially inflates the apparent frequency of residential changes, further harming the consumer's risk score.

22. Clarity's file on Ms. Mason also includes data indicating that during various overlapping timeframes, Ms. Mason's housing status was "OTHER," "OWN," "RENT" and "UNKNOWN."

23. For example, Clarity reported Ms. Mason's housing status as "OTHER" from July 12, 2021 through August 4, 2025, "OWN" from July 12, 2021 through January 28, 2026, "RENT" from May 18, 2022 through May 7, 2026, and "UNKNOWN" from July 28, 2025 through May 7, 2026.

24.    The multiple and contradictory housing statuses Clarity reported for Ms. Mason cannot all be simultaneously accurate.

25.    Beyond this, the designation "OTHER" is a catch-all category not defined anywhere in Clarity's consumer disclosure, providing no meaningful information to a lender.

26.    More importantly, it is false – Ms. Mason was not living in an "OTHER" housing situation at any point relevant to Clarity's reporting.

27.    Many subprime lenders – the type Clarity services almost exclusively – use housing status to gauge risk and treat an "OTHER" housing status as less stable than "OWN" or "RENT." That treatment leads to less favorable lending terms, or outright denials of credit, for Ms. Mason.

28.    On July 12, 2021, Clarity incorporated data into Ms. Mason's file indicating that her housing status was both "OTHER" and "OWN" – mutually exclusive designations that cannot simultaneously be true for the same consumer on the same day – into its credit file on Ms. Mason.

29.    Consequently, Clarity's inclusion of inaccurate and conflicting housing status data had a significant negative impact on Ms. Mason's ability to obtain new credit.

30.    Clarity also frequently misreported Ms. Mason's length of residential history, often contradicting itself in its own reporting.

31.    On June 3, 2022 at 5:37:08 PM, Clarity incorporated data indicating Ms. Mason resided at her address for 48 Months into her credit file. Just 6 minutes later at

5:43:34 PM, Clarity incorporated data indicating Ms. Mason had resided at her address for 36 Months.

32.     Thus, Clarity's report indicates Ms. Mason lost 1 year of residential history in just 6 minutes, which is impossible.

33.     Similarly, on May 23, 2023 at 10:03:31 AM, Clarity incorporated data into its credit file on Ms. Mason indicating that she resided at her address for 0 Months. Just 19 minutes later at 10:22:42 AM, Clarity incorporated data indicating Ms. Mason had resided at her address for 11 Months.

34.     Thus, Clarity's report indicates Ms. Mason gained 11 months of residential history in just 19 minutes, which is impossible.

35.     The overlapping and contradictory residential timelines Clarity reported create a facially inaccurate and nonsensical residential history that violates the mandate of 15 U.S.C. § 1681e(b) and creates the negative and false impression that Ms. Mason has recently moved, has been unhoused, moves residences frequently, or resides at multiple residences simultaneously.

### Incorrect Residential History and Addresses

36.     Clarity's employment data also contains overlapping, contradictory, and obviously-false information.

37.     Clarity's file reflects that Ms. Mason was born in mid-1965.

38.     Despite this, Clarity incorporated data into its file on Ms. Mason indicating that she had been with her employer for approximately 54.1 years (649 months) as of May 23, 2023.

39. A tenure of 54 years would require Ms. Mason to have begun working at age 5 – a fact no reasonable procedure could have failed to flag, since the check is nothing more than subtracting one number in Clarity's own file from another.

40. The same defect infects Clarity's employment-tenure reporting. On May 18, 2022 at 1:03:37 PM, Clarity reported Ms. Mason had been with her employer for 24 Months. Just 37 seconds later at 1:04:14 PM, Clarity reported Ms. Mason had been with her employer for 48 Months. It is impossible for a consumer to gain 2 years of employment history in 37 seconds on a single day.

41. The multiple timeline impossibilities Clarity incorporated into Ms. Mason's credit file with respect to her employment tenure create a misleading and unreliable record of Ms. Mason's employment stability and the damaging impression that Ms. Mason was either repeatedly unemployed or had a tendency to abruptly switch occupations.

42. Clarity also incorporated data into its file on Ms. Mason indicated that her employer's address was "NULL NULL NULL."

43. Such reporting provides no meaningful information to a potential lender and was the likely result of the insertion of default, dummy, or placeholder data.

44. Thus, Clarity's systems are literally programmed to insert false information into consumer credit files in many instances, despite the FCRA's mandate to utilize procedures designed to ensure maximum possible accuracy of information.

45. Clarity's reporting further demonstrates a basic failure to confirm that data is being placed in the correct section of her credit file. The values "ACUTE

WOUND CARE," "CANTERFIELD," "PALMS," "SHELL POINT," and "SOLID SURFACE TOPS" each appear in Ms. Mason's file as both an Employer Name and an Occupation.

46.     An employer is a business; an occupation is a job function the consumer performs. These are categorically distinct types of information, and Clarity's own disclosure separates them into distinct sections.

47.     A reasonable procedure to assure maximum possible accuracy would, at minimum, refuse to populate the Occupation field with values that are obviously company names.

48.     Clarity also incorporated "123 MAIN STREET FORT MYERS FL", "NULL NULL NULL", and "UNKNOWN FORT MYERS FL" each as valid Employer Addresses in Ms. Mason's credit file.

49.     These "addresses" are prime examples of Clarity's use of dummy, placeholder information in a consumer's credit file when a data furnisher fails to input correct data or fails to provide properly formatted data.

50.     Notably, none of these addresses includes any ZIP code, an obvious red flag that no real-world address validation could have permitted.

51.     Despite information like this being made-up, dummy, placeholder data, Clarity does not disclose this to consumers or to creditors when it sells the data.

### Clarity's File Includes Obviously False Income Data

52.     Clarity's reporting of Ms. Mason's "Net Monthly Income" contains variations so extreme and statistically improbable that, on their face, the data is

virtually assured to be false.

53.    For example, on July 12, 2021, Clarity simultaneously reported Ms. Mason's Net Monthly Income as both $3,000 and $4,000.

54.    A person can only have one total income at any given moment; reporting materially different income figures for the exact same date is, on its face, so atypical and virtually assured to be false.

55.    Similarly, on October 16, 2025, Clarity simultaneously reported three different Net Monthly Income figures for Ms. Mason: $3,583, $3,600 and $4,166 – another set of mutually exclusive figures Clarity reported for a single date.

56.    Again, on May 23, 2023, Clarity simultaneously reported four different Net Monthly Income figures for Ms. Mason: $5,000, $5,001, $6,000 and $6,500 – another set of mutually exclusive figures Clarity reported for a single date.

57.    Among the income figures Clarity reported was $0.00 – directly contradicted by Clarity's own simultaneous reporting that Ms. Mason is actively employed. A consumer cannot maintain employment while simultaneously earning $0 in income.

58.    Income is a critical metric used by financial institutions to calculate debt-to-income ratios and evaluate creditworthiness. By reporting wildly inconsistent and internally contradictory income figures for Ms. Mason, Clarity's file creates a false and misleading picture of Ms. Mason's financial situation, significantly increasing the likelihood of credit denials, reduced credit limits, or extension of credit on much less favorable, higher-interest terms.

## Clarity's File on Ms. Mason Includes Obviously False Pay Frequencies

59.     Clarity's reporting of Ms. Mason's pay frequency is likewise clearly false.

60.     Clarity's file lists facially absurd pay-frequency values for Ms. Mason, including: "JUST WEEKLY" and "ANNUALLY."

61.     The word "Just" is meaningless in this context and provides no information beyond "WEEKLY," yet Clarity's systems treat it as a distinct pay frequency, creating a new data point from its simultaneous reporting of a weekly pay schedule.

62.     A pay frequency of "ANNUALLY" was also false. Most U.S. states require employers to pay wages at least once per month, and many require pay at least semimonthly or biweekly.

63.     No person with the salary and employment history Clarity reported for Ms. Mason would receive an annual pay frequency.

64.     On July 28, 2025, Clarity incorporated data into Ms. Mason's credit file reporting that her next paycheck would arrive on January 1, 2001 – a date that had already passed more than 25 years earlier.

65.     By definition, a "next paycheck" date refers to a future payday; reporting a date that, on the very day of the report, was already in the past is a logical impossibility on the face of the data.

66.     Clarity knew, or in the exercise of any reasonable procedure should have known, that no employed consumer's next paycheck could be scheduled for a day that had already passed when the report was generated. Yet Clarity incorporated this

facially absurd placeholder value into Ms. Mason's credit file and sold it to creditors anyway.

## Inaccurate Telephone Numbers

67.     Clarity's file on Ms. Mason also contains obviously-false telephone numbers.

68.     Clarity's file includes a work phone number for Ms. Mason of "239-XXX-1111 Ext. 239XXX1111," listing as the "extension" the exact same 10 digits as the main telephone number itself, without any dashes or separators.

69.     A telephone extension is by definition a short suffix used to reach a specific line within an organization – typically two to five digits. A 10-digit "extension" identical to the main number could not connect to any actual telephone extension on any phone system.

## Inaccurate Dates of Birth

70.     A prime example of Clarity's disregard for accuracy is its current reporting of five different dates of birth for Ms. Mason, each containing a different month, day, and year.

71.     A consumer can only have one date of birth; the additional dates Clarity has on file are necessarily false and inaccurate.

72.     The harm to Ms. Mason from this reporting is severe. Date of birth is a core identity field, and Clarity's own proprietary credit scoring system – along with the underwriting models of the subprime lenders to whom Clarity sells consumer reports – treats inconsistencies in identity data as a primary red flag for fraud and

identity theft.

73.    A consumer file showing five different dates of birth is, by design, scored as a high-risk applicant whose identity cannot be reliably established. The result is materially lower credit scores, denials of credit, and credit offered only on substantially less favorable terms – consequences Ms. Mason suffered as a direct result of Clarity's reporting of false birth dates that no reasonable procedure designed to assure maximum possible accuracy of consumer reports would have permitted.

74.    The majority of lenders to whom Clarity sells reports thoroughly examine a consumer's employment history and income data to verify the consumer has a history of reliable employment and stable income.

75.    Consequently, Clarity's inclusion of demonstrably false information about Ms. Mason's employment, income, housing status, and identifying information had a significant negative impact on Ms. Mason's ability to obtain new credit with favorable terms.

### Clarity Included False Information in Reports to Third Parties

76.    Clarity has sold at least **148 consumer reports** to Ms. Mason's creditors and potential creditors in the past two years, alone.

77.    Each of these reports contained at least some of the inaccurate information outlined above.

78.    Clarity's inclusion of facially-inconsistent and obviously-false data in its consumer reports on Ms. Mason demonstrate that its procedures for assuring the accuracy of its reports are unreasonable.

**Clarity Fails to Meaningfully Disclose Legally Required Information**

79.    On or about May 8, 2026, Ms. Mason requested a copy of her consumer credit disclosure from Clarity.

80.    Upon receipt of Ms. Mason's request, Clarity was required to disclose all information "clearly and accurately" in the credit file, including the identity of each person who obtained a consumer report within the prior year. *See* 15 U.S.C. § 1681g(a)(3)(A)(ii).

81.    The FCRA defines "Identification" as "the name of the person or, if applicable, the trade name (written in full) under which such person conducts business." *See* 15 U.S.C. § 1681g(a)(3)(B)(i).

82.    Frequently, Clarity fails to fulfill its legal obligations regarding disclosure of this data, often disclosing what can be fairly called incomprehensible information which virtually no one would comprehend.

83.    For example, Clarity's disclosure shows an inquiry made on June 1, 2025 which Clarity identified to Ms. Mason only as "CCB/TLS/MK Analytics/Propel." This single inquiry purports to identify four separate end users – "CCB," "TLS," "MK Analytics," "Propel" – bundled together as one entry, with no indication which of these entities actually requested the report or what their relationship to one another is.

84.    The FCRA requires identification of *each* person who obtained a consumer report – not a slash-delimited list of candidates from which the consumer is left to guess.

85. This pattern is not isolated. Clarity's disclosure contains additional inquiries reported in the same opaque, bundled format.

86. On March 21, 2026, Clarity disclosed an inquiry as "Lending Creative/Insight/Infinity" – again purporting to identify three separate end users ("Lending Creative," "Insight," "Infinity") within a single entry, without naming any one of them as the actual requesting party or providing the full trade name of any.

87. Likewise, Clarity disclosed an inquiry on May 7, 2026 as "RISE/CCBank/EDS/PreQual," a bundle in which Ms. Mason's recognition of "RISE" as a consumer lender does not tell her whether that entity, or "CCBank," "EDS," and "PreQual," actually obtained her consumer report.

88. Likewise, Clarity disclosed an inquiry on May 7, 2026 as "Uplift Loans/Tekambi/Financial Technologies," a bundle in which Ms. Mason's recognition of "Uplift Loans" as a consumer lender does not tell her whether that entity, or "Tekambi" and "Financial Technologies," actually obtained her consumer report.

89. Whether bundled with a recognizable name or composed entirely of opaque abbreviations, none of these disclosures provided Ms. Mason with the address, phone number, or other contact information that would allow her to identify which entity actually obtained her consumer report or to follow up with that entity directly.

90. Multiple consumers have previously sued Clarity for failing to disclose the names of entities obtaining credit reports as legally required.

91. Clarity is thus aware of the flaws in its consumer disclosures pertaining to the disclosure of end users.

92. Clarity's failure to disclose this information was thus willful.

93. Clarity's incomplete disclosure of who accessed Ms. Mason's credit report and why caused Ms. Mason significant frustration, stress, and concern.

### Clarity Fails to Investigate Disputes

94. Clarity, unlike its parent company Experian Information Solutions, Inc. ("Experian"), does not provide consumers any ability to dispute inaccurate information online.

95. On May 12, 2026, after becoming aware of Clarity's reporting, Ms. Mason mailed Clarity a dispute letter, therein disputing the accuracy of the false information appearing on her consumer disclosure to Clarity, including the inaccurate personal information, residential information, employment information, and income information.

96. Clarity, upon receipt of Ms. Mason's dispute, was required to make a reasonable investigation into her disputes and report the results of the investigation back to her within 30 days. See 15 U.S.C. § 1681i(a)(1)(A).

97. While Clarity acknowledged receiving Ms. Mason's dispute, it did not initiate any investigation into Ms. Mason's dispute.

98. Thus, Clarity failed to make a reasonable investigation as required by the FCRA, § 1681i(a)(1)(A), since it failed to conduct any investigation.

99.    Under 15 U.S.C. § 1681i(a)(1)(A), the duty to reinvestigate is mandatory and attaches the moment the CRA receives the dispute.

100.    The fact that Clarity failed to make any investigation into multiple and obvious errors is inherently unreasonable.

101.    Ms. Mason's experience with Clarity is far from unique.

102.    Clarity frequently fails to investigate consumer disputes, either ignoring them completely or sometimes sending a form letter to the consumer stating it could not identify what was being disputed, even when the consumer's dispute is crystal-clear.

103.    Clarity, unlike Experian, does not utilize e-OSCAR, an online platform designed to quickly, efficiently, and effectively resolve consumer disputes.

104.    Clarity must thus use much more labor-intensive methods to investigate disputes.

105.    On information and belief, Clarity frequently declines to investigate disputes as a means to avoid the time and cost of investigating consumer disputes, which it lacks any efficient way of processing.

### Clarity's Lack of Standards Constitute Willful Violations of the FCRA

106.    Clarity operates in stark contrast to its parent company, Experian.

107.    While Experian enforces Metro 2 guidelines – industry standards which contain hundreds of pages of explanation on how to report information – Clarity requires no such compliance with Metro 2 guidelines and has no discernible quality-assurance standards.

108.    In place of an industry-standard data-quality framework, Clarity's operative "standard" is to ingest and republish whatever data its furnishers transmit, without applying even rudimentary validity checks, as demonstrated by the plethora of false, self-contradictory data on Ms. Mason's report.

109.    The impossibilities in Ms. Mason's file are not isolated transcription errors traceable to a single furnisher.

110.    They are pervasive and structural – spanning every category of data Clarity reports, including identity, residence, employment, income, and contact information – and they share a common signature: each is the kind of error that a single, elementary validity check would have caught before the data was incorporated into Ms. Mason's file and sold to creditors.

111.    Clarity is not unaware that this is occurring. Clarity has been the subject of repeated FCRA litigation arising from the same categories of inaccuracy described in this complaint.

112.    Despite this notice, Clarity has continued to operate its systems in materially the same way, without implementing the basic validity checks that would have prevented the errors complained of here.

113.    Clarity's decision to forgo the quality controls used by its parent company, in the face of repeated notice that this decision causes ongoing harm to consumers, constitutes a reckless disregard for the rights of the consumers whose data it sells, including those of Ms. Mason.

## Damages Suffered by Ms. Mason

114.    As a direct and proximate result of Clarity's inaccurate reporting, Ms. Mason applied for credit and was either denied outright or offered credit on materially less favorable terms than she would have received had Clarity's file accurately reflected her true creditworthiness.

115.    The practical consequences of Clarity's inaccurate reporting are severe. A consumer who appears to have an unverifiable identity, conflicting employment history, wildly inconsistent income, and frequent address changes – all of which Clarity falsely reported about Ms. Mason – is considered a high-risk borrower by the subprime lenders that Clarity primarily serves.

116.    This directly results in credit denials, higher interest rates, lower loan amounts, and more restrictive repayment terms, causing Ms. Mason concrete and measurable financial harm.

117.    As a result of the Defendant's actions, Ms. Mason has suffered additional damages, including wasted time trying to figure out what the information in her Clarity file means and how it got there, significant emotional distress and aggravation, and damage to her reputation.

118.    As of the date of this filing, Clarity continues to include the aforementioned false information in Ms. Mason's credit file. As such, Ms. Mason demands that Clarity conduct an investigation upon service of this lawsuit and correct her file within 30 days.

119. Ms. Mason has hired the undersigned law firm to represent her in this matter and has assigned the firm her right to fees and costs.

## COUNT I
## CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)

120. Ms. Mason reincorporates paragraphs 1 - 119 as if fully stated herein.

121. Clarity willfully violated 15 U.S.C. § 1681e(b) when it failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports sold regarding Ms. Mason, as Clarity sold consumer reports containing all of the inaccuracies outlined above.

122. Clarity has been sued on numerous occasions for very similar situations and knows that it frequently sells reports with erroneous information about consumers.

123. Clarity's conduct was thus willful or done with a reckless disregard for Ms. Mason's rights under the FCRA.

124. As a result of its conduct, Clarity is liable to Ms. Mason for the greater of her actual damages or statutory damages of up to $1,000 for each occurrence, punitive damages, reasonable attorneys' fees, and costs, per 15 U.S.C. § 1681n.

WHEREFORE, Ms. Mason respectfully requests this Honorable Court enter judgment against Clarity for:

a. the greater of Ms. Mason's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3);

and

d.    such other relief that this Court deems just and proper.

## COUNT II
## CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)
## (Pled in the Alternative to Count I)

125.    Ms. Mason reincorporates paragraphs 1 - 119 as if fully stated herein.

126.    Clarity owed Ms. Mason a legal duty to utilize reasonable procedures to assure the maximum possible accuracy of its consumer reports regarding Ms. Mason.

127.    Clarity breached this duty when it sold consumer reports containing each of the aforementioned inaccuracies.

128.    Clarity's breach amounts to a negligent violation of 15 U.S.C. § 1681e(b), and as a result, Ms. Mason is entitled to her actual damages, attorneys' fees, and costs, pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Ms. Mason respectfully requests this Honorable Court enter judgment against Clarity for:

a.    actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c.    such other relief that this Court deems just and proper.

## COUNT III
## CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(3)(A)(ii)

129.    Ms. Mason reincorporates paragraphs 1 - 119 as if fully stated herein.

130.   Clarity violated 15 U.S.C. § 1681g(a)(3)(A)(ii) when it failed to identify each person, including the end-user, that procured Ms. Mason's consumer report during the one-year period preceding the date upon which she made the request.

131.   Clarity is aware that its consumer disclosures fail to properly identify end-users via multiple consumer lawsuits.

132.   Clarity's conduct was willful, intentional, and exhibited a reckless disregard for its duties to provide clear and accurate disclosures.

133.   As a consequence, Clarity is liable to Ms. Mason for the greater of Ms. Mason's actual damages or statutory damages of up to $1,000 for each occurrence, punitive damages, and reasonable attorneys' fees and costs, pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Ms. Mason respectfully requests this Honorable Court enter judgment against Clarity for:

    a.    the greater of Ms. Mason's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

    b.    punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

    c.    reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and

    d.    such other relief that this Court deems just and proper.

## COUNT VI
## CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(3)(A)(ii)
### (Pled in the Alternative to Count III)

134.   Ms. Mason reincorporates paragraphs 1 - 119 as if fully stated herein.

135.   Clarity owed Ms. Mason a legal duty to disclose the identity of each user that obtained her consumer report within one year of Ms. Mason's request.

136.   Clarity breached this duty when it failed to identify each person, including end-users, who procured Ms. Mason's consumer report.

137.   Clarity's breach amounts to a negligent violation of 15 U.S.C. § 1681g(a)(3)(A)(ii), and Ms. Mason is entitled to her actual damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Ms. Mason respectfully requests this Honorable Court enter judgment against Clarity for:

a.   actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.   reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c.   such other relief that this Court deems just and proper.

## COUNT V
## WILLFUL VIOLATIONS OF THE FCRA – 15 U.S.C. § 1681i(a)(1)(A)

138.   Ms. Mason reincorporates paragraphs 1 - 119 as if fully stated herein.

139.   Clarity violated 15 U.S.C. § 1681i(a)(1)(A) when it failed to conduct a reasonable investigation after receiving notice of Ms. Mason's dispute in May 2026,

since it failed to conduct any investigation at all.

140. Clarity's conduct was a result of its regular policies and procedures, which frequently result in it not conducting any investigation at all, and/or claiming it "can't identify" what the consumer is disputing, even when it is abundantly clear, as in the instant matter.

141. Clarity's conduct was thus willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable investigations, and its policies could reasonably be foreseen to cause harm to Ms. Mason.

142. Accordingly, pursuant to 15 U.S.C. § 1681n, Clarity is liable to Ms. Mason for the greater of her actual damages and statutory damages of up to $1,000 for each occurrence, as well as punitive damages, reasonable attorneys' fees, and costs.

WHEREFORE, Ms. Mason respectfully requests this Honorable Court enter judgment against Clarity for:

a.     the greater of Ms. Mason's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.     punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.     reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and

d.     such other relief that this Court deems just and proper.

## COUNT VI
## NEGLIGENT VIOLATIONS OF THE FCRA – 15 U.S.C. § 1681i(a)(1)(A)
### (Pled in the Alternative to Count V)

143.    Ms. Mason reincorporates paragraphs 1 - 119 as if fully stated herein.

144.    Clarity had a legal duty to reasonably investigate Ms. Mason's disputes.

145.    Clarity breached this duty when it failed to make any investigation whatsoever.

146.    Clarity's breach violated 15 U.S.C. § 1681i(a)(1)(A), and as a result, Ms. Mason is entitled to her actual damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Ms. Mason respectfully requests this Honorable Court enter judgment against Clarity for:

a.    actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c.    such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.


Respectfully submitted on June 26, 2026, by:

**SERAPH LEGAL, P.A.**

*/s/ Bryan J. Geiger*
Bryan J. Geiger, Esq.
Florida Bar # 119168
3505 E. Frontage Rd., Ste. 145
Tampa, Florida 33607
(813) 321-2348
BGeiger@seraphlegal.com
Service@seraphlegal.com
Lead Counsel for Plaintiff